UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANTHONY ZANUCCOLI            )
                                )
       v.             )     CIVIL NO. 04-12170-JLT
                                )
UNITED STATES OF AMERICA     )
                                )

### GOVERNMENT'S OPPOSITION TO PETITIONER'S MOTION TO AMEND

Anthony Zanuccoli("Petitioner") has moved to amend his 28 U.S.C. § 2255 petition.  The proposed amendment seeks to add a Blakely claim to a 2255 Petition that otherwise asserts that Federal Defender Leo Sorokin failed to file an appeal as Zanuccoli now claims he requested.[1]

The government opposes the motion to amend.  Because Zanuccoli's 20-year sentence was governed by specific admissions he made in a plea agreement (that heroin he sold resulted in the

---

[1]  The government has now received transcripts from the plea and sentencings and an affidavit from Attorney Sorokin and will respond to the Petition.  The government notes, however, that the claims asserted are nothing short of incredible.  Zanuccoli entered into a plea agreement tendered to the court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) in which he agreed that 240 months was the appropriate disposition in a case in which he admitted he had caused the death of a young woman who purchased heroin from him.  Having gotten exactly what he bargained for in the plea agreement, there was of course nothing to appeal. See Roe v. Flores-Ortega, 120 S.Ct. 1029 (2000)("a guilty plea reduces the scope of appealable issues and ... may indicate that the defendant seeks an end to judicial proceedings"; also noting that an attorney who advises client that a guilty plea will result in a specified sentence has no reason to consult about a possible appeal after the guilty plea is knowingly made and sentence imposed is consistent with attorney's prediction).

death of Melanie Thompson) and his own substantial history of
drug trafficking convictions (which subjected him to a mandatory
life sentence) rather than any guideline adjustments that could
raise the Sixth Amendment, this case raises no <u>Blakely-</u>
<u>Fanfan/Booker</u> issues.  Because the proposed amendment would
therefore be futile, leave to amend should be denied.

**BACKGROUND**[2]

The investigation underlying this case was instituted on
March 28, 2002 when the Peabody Police Department received a
request to assist an ambulance that had been called to 44
Driscoll Street in Peabody, Massachusetts.  Once at that address,
the officers responding to the call found an unresponsive white
female on the sidewalk in front of the house.

This individual was subsequently identified as Melanie
Thompson.  Officers performed CPR on Ms. Thompson until the
ambulance arrived to take her to Salem Hospital.  Notwithstanding
the efforts to resuscitate her, Ms. Thompson remained non-
responsive.

Melanie Thompson died two days later.  Tests performed at
Salem Hospital after her admission revealed that Thompson had
both opiates and amphetamine in her blood system.  The
Massachusetts Medical Examiner subsequently determined that Ms.

---

[2]  The facts set forth in this pleading are all taken from
the uncontested portions of the Presentence report in this
matter.

Thompson died from acute opiate intoxication, i.e., a heroin overdose.

After Thompson was taken to Salem Hospital, officers spoke with a cooperating witness ("the CW") who had been with Thompson prior to her overdose.  The CW advised state law enforcement agents that he/she had driven Thompson earlier in the day to meet with Melanie Thompson's ex-boyfriend "Tony" (later identified as Zanuccoli).  The CW indicated that Thompson had purchased heroin from Zanuccoli that day and stated that he/she was willing to make an additional purchase of heroin from Zanuccoli and to have his/her conversations with Zanuccoli recorded.

The CW placed a consensually recorded telephone call to Zanuccoli on April 1, 2002 at approximately 1:35 p.m. to order heroin. In the call, the CW asked Zanuccoli for a quantity of heroin and Zanuccoli said he could get it.  The CW told Zanuccoli that he/she would meet him at the Mason Tannery in Salem in a half hour.

The CW was then given a transmitting device, $100 in official government currency and the CW and his/her car were searched with negative results.  After the search, the CW was surveilled as he/she drove to the Mason Tannery where he/she arrived at approximately 2:05 p.m.

Agents were able to watch (and listen to) the CW make

contact with Zanuccoli outside the Mason Tannery. [3]  The CW told
Zanuccoli that he wanted "the same stuff that Melanie got last
Thursday."  Zanuccoli acknowledged having made the sale to
Melanie Thompson the previous Thursday and remarked that "it
knocked her on her ass."  Zanuccoli then said that Melanie had
done the whole $50 on Thursday and that she shouldn't have.
Zanuccoli then gave the CW two $50 bags of heroin.

Once the transaction had been completed, Zanuccoli was
arrested outside the Mason Tannery.  Zanuccoli immediately
admitted having gotten the heroin from an associate who was
identified and also arrested.  Zanuccoli was also found to have
the $100 in official government currency that had been provided
to the CW in his pants pocket.

The state law enforcement agents on the scene also met with
the CW who turned over two plastic bags containing heroin.  As
set forth above, Zanuccoli also acknowledged that he had sold the
heroin to the CW.

After being placed under arrest, Zanuccoli agreed to speak
with law enforcement agents and signed a <u>Miranda</u> waiver.
Zanuccoli admitted that he had sold a $50 bag of heroin to
Melanie Thompson on March 28, 2002 inside the Mason Tannery and

---

[3]  Although agents were able to listen to the conversation
between the CW and Zanuccoli over the transmitter, the recording
failed due to a technical malfunction.  The telephone call prior
to the meeting was recorded.

4

acknowledged that he had sold more heroin to the CW immediately prior to his arrest. Zanuccoli stated that Thompson did not appear to be high when she came into the Tannery on March 28 but that she went into the bathroom inside the Posting Room at the Tannery immediately after getting the heroin and appeared to be high when she came out. Zanuccoli said that Thompson was unsteady when she came out of the bathroom and began stumbling as she left the building. Zanuccoli also said that he and another individual had to pick Thompson up and "just about had to about carry her" to the car that was waiting for her in the parking lot. This was of course immediately prior to Thompson's collapse and the frantic call for an ambulance that began the case as set forth above.

Zanuccoli was thereafter named in a three-count drug indictment (that included the sale of heroin to Thompson). From the beginning of the case, Zanuccoli was advised that the government alleged that the heroin Zanuccoli admitted selling on March 28 to Melanie Thompson resulted in her death. See 21 U.S.C. §841(b)(1)(c).

Zanuccoli thereafter entered into the plea agreement attached as Exhibit 1. Among other things, the agreement contained an acknowledgment by him that "the distribution charged in Counts Two of the Indictment and the conspiracy charged in Count One of the indictment resulted in the death of Melanie

Thompson and that ... he is subject to a mandatory minimum sentence of 20 years."[4]  The agreement also contained a waiver by Zanuccoli of "any claim he ha[d] under Apprendi v. New Jersey, U.S.S.G. § 2D1.1, or on any other basis to have that determination made by the jury at trial."  The plea agreement was tendered to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and contained an agreement by the parties that the appropriate sentence was 240 months).[5]  On October 20, 2003, the defendant got exactly what he bargained for, a sentence of 240 months.

## ARGUMENT

The law applicable to motions seeking to amend pleadings in

---

[4]  In fact, the defendant faced a maximum sentence of life imprisonment based on his prior drug trafficking convictions. See 21 U.S.C. §841(b)(1)(C).  This also raise no Blakely issues. Almendarez-Torres v. United States, 523 U.S. 224, (1998).  See also See also United States v. Terry, 240 F.3d 65 (1st Cir. 2001)( in rejecting argument that Apprendi effectively overruled Almendarez-Torres, the First Circuit noted that: "[defendant] Terry points out that if you count heads, the combination of the justices in the majority in Apprendi and in the dissent in Almendarez- Torres would provide a majority on the Supreme Court to overrule Almendarez- Torres. Perhaps so, but until Almendarez-Torres is overruled, we are bound by it.")  The defendant's claim that the 851 Information in this case based on a typographical error in the certificate service (and absent any facts showing that the 851 was not in fact served) also gets the defendant nothing, particularly where the defendant was sentenced within the default maximum specified in 21 U.S.C. §841 (b)(1)(C).

[5]  The plea agreement thus anticipated that, based on Zanuccoli's cooperation immediately after his arrest, he would receive a 5K departure and that the appropriate reduction was from mandatory life to 240 months.  That's exactly what happened.

civil actions is straightforward.[6]  These motions are committed to the discretion of this Court.  E.g., Demars v. General Dynamics Corp., 779 F.2d 95, 99 (1st Cir. 1985); Farkas v. Texas Instruments, Inc., 429 F.2d 849, 851 (1st Cir. 1970).  Although leave to amend is normally to be freely given, it can be withheld for any legitimate reason.  E.g., Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. Cir. 1994).  Such reasons can include the futility of the proposed amendment.  E.g., Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1st Cir.1995).

The amendment proposed in this case should be denied because it is futile and not advanced in good faith.  The proposed amendment seeks to add some sort of Blakely claim based on a perceived Sixth Amendment violation in connection with the defendant's sentencing.  Yet, the defendant's sentencing was based on a plea agreement in which he admitted responsibility for the overdose death of Melanie Thompson and waived the very thing about which he now complains.  Because Blakely has no application to facts that a defendant has admitted or rights that he explicitly waived, the motion to leave to amend should be denied.

---

[6]  The First Circuit has recognized that the Federal Rules of Civil Procedure applies to efforts to amend 2255 Petitions.  See Rogers v. United States, 180 F.3d 349 (1st Cir. 1999).  See also 28 U.S.C. § 2242 (permitted Petitions to be amended or supplemented as provided in the rules applicable to civil actions); Rule 12 of the Rules Governing Section 2255 Proceedings(permitting court to apply rules governing civil actions to 2255 proceedings).

Blakely, 124 S. Ct. at 2537 (The Supreme Court thus found unconstitutional the imposition of a sentence under the Washington state system that was based on facts "neither admitted by [the defendant] nor found by a jury."). See also United States v. Burns, 2004 WL 1922177 (6th Cir. August 24, 2004) (unpublished)(rejecting Blakely claim where defendant admitted at sentencing hearing that firearm was stolen but nevertheless claimed that firearm enhancement under U.S.S.G. §2D1.1(b)(1) should not be applied because he was not aware that gun was stolen); United States v. Leach, 325 F.Supp.2d 557, 559 (E.D. Pa 2004) (applying school zone and firearms enhancement to case in which defendant admitted to underlying facts; court noted that "in cases where a court, applying the Guidelines as they were intended, finds that there are no applicable upward adjustments under the Guidelines beyond the admitted facts or the jury verdict on the elements of the offense, the Guidelines are constitutional and should be applied"); United States v. Fotiades-Alexander, __ F.Supp.2d. __, 2004 WL 1845552 (E.D. Pa. August 12, 2004) (applying enhancements for amount of loss, vulnerability of victim and position of trust and responsibility based on statements admitted by defendant at plea hearing).

There is of course a more fundamental reason for denying the requested motion based its obvious futility—that the defendant's sentence was based on the application of a mandatory minimum

sentence and was therefore not a guideline sentence at all. Because the law is clear that neither <u>Blakely</u> has any application to such cases, the motion to amend should be denied.

By its terms, <u>Blakely</u> did not overrule <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986) or <u>Harris v. United States</u>, 536 U.S. 545 (2002). 2004 WL 1402697, at *5. In <u>Harris</u>, the Court reaffirmed the holding of <u>McMillan v. Pennsylvania</u>, that a fact that increases a statutory <u>minimum</u> sentence within the authorized range may be found by the sentencing judge by a preponderance of the evidence, and limited the <u>Apprendi</u> rule to facts that increase a statutory maximum. 536 U.S. at 568-569; <u>id</u>. at 556-568 (opinion of Kennedy, J.); <u>id</u>. at 569-572 (opinion of Breyer, J.); <u>see also</u> <u>Blakely</u>, 2004 WL 1402697, at *5 (distinguishing <u>McMillan</u>). Pre-<u>Blakely</u> law in this Circuit concerning the application of <u>Harris</u> to sentences under Title 21 will thus continue to apply. <u>See</u> <u>United States v. Goodine</u>, 326 F.3d 26, 29-31 (1st Cir. 2003) (" a judge's determination of drug quantity can influence the mandatory minimum sentence imposed, and such incremental changes in the minimum are typical sentencing provisions determined by the judge"). <u>Compare</u> <u>United States</u> v. <u>Luciano</u>, 311 F.3d 146, 154 (2d Cir. 2002) (claim that the imposition of a mandatory minimum sentence under 21 U.S.C. 841(b) without a jury finding violates <u>Apprendi</u> "is not tenable after <u>Harris</u>") <u>with</u> <u>United States</u> v. <u>Velasco-Heredia</u>, 319 F.3d 1080,

9

1085 (9th Cir. 2003) (<u>Harris</u> does not apply to imposition of mandatory minimum sentence under 21 U.S.C. 841(b) because, unlike 18 U.S.C. 924(c), finding which increases mandatory minimum sentence under Section 841(b) also exposes defendant to higher statutory maximum).

Post-<u>Blakely</u> cases specifically dealing with mandatory minimums such as <u>Spero v. United States</u>, 2004 WL 1516863 (11th Cir. July 8, 2004) (per curiam), support this position.  Spero was convicted of heroin trafficking under 21 U.S.C. §841.  At sentencing, the Court made a judicial finding by a preponderance of the evidence that Spero's distribution had resulted in the death of a heroin user and imposed the 20-year mandatory minimum required by 21 U.S.C. §841(b)(1)(C).  On a subsequent section 2255 motion, however, the district court concluded that <u>Apprendi</u> required the government to prove the overdose at trial and reduced the sentence to 60 months (the otherwise applicable guideline sentence without considering the overdose death).  The government appealed that decision to the Eleventh Circuit.

In a decision which confirms one of the fundamental limitations recognized by Justice Scalia's opinion for the Court in <u>Blakely</u>, the Court of Appeals reversed.  It held that, because the 20 year mandatory minimum sentence originally imposed by the district court did not exceed the otherwise applicable statutory maximum, there was no <u>Apprendi</u> error.  This is of course the law

in this circuit as well. E.g., United States v. Eirby, 262 F.3d 31, 37 (1st Cir.2001) (Apprendi does not effect the application of a mandatory minimum sentence in drug cases where the resulting sentence was less than 240 months; court noted that  Apprendi taken pains to preserve the authority of McMillan v. Pennsylvania, 477 U.S. 79, 81-84, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) which upheld a state statute that required a mandatory minimum sentence based solely on a judge's preponderance-of-the-evidence findings and concluded that the mere imposition of a mandatory minimum did not by itself implicate the due process issues raised by Apprendi); United States v. Robinson, 241 F.3d 115, 123 (1st Cir. 2001)("since McMillan clearly allows a fact that triggers a mandatory minimum sentence to be found by a judge using a preponderance-of-the-evidence standard as long as the mandatory minimum does not exceed the otherwise applicable statutory maximum, it forecloses [any argument that such mandatory minimums violate Apprendi]"). See also United States v. Harris, 122 S.Ct 2406 (2002)(mandatory sentences contained in 18 U.S.C. s 924 (c) remain sentencing factors so long as the sentence fall within the statutory maximum); United States v. Giluardo-Parra Excerpt from:  340 F.Supp.2d 1243, 1246 (D. Utah 2004) (Blakely does not impact the application of minimum mandatory sentences)

	Here, of course, the terms of the plea agreement demonstrate

that there could also be no legitimate Sixth Amendment claim
because the defendant explicitly waived it.  As set forth above,
the plea agreement in this case specifically provided that:

> The defendant waives any claim he has under <u>Apprendi v. New
> Jersey</u>, U.S.S.G. § 2D1.1, *or on any other basis* to have
> these determinations [i.e, whether his sale of heroin
> resulted in the death of Melanie Thompson] made by the jury
> at trial.

Plea Agreement at 2.  Such a waiver, procured here by the
defendant in order to avoid a potential mandatory life sentence
that he acknowledged would apply in his case, is of course
enforceable.  <u>E.g.</u>, <u>United States</u> v. <u>Lopez</u>, 300 F.3d 46, 58-60
(1st Cir. 2002) (defendant waived claim that indictment failed to
allege drug quantity, where defendant pleaded guilty despite
being aware of <u>Apprendi</u> issue, and did so to avoid possible
reindictment); <u>United States</u> v. <u>Gaudet</u>, 81 F.3d 585, 590 (5th
Cir. 1996) (defendant can implicitly waive right to indictment)
(citing cases).

12

**CONCLUSION**

The proposed <u>Blakely</u> amendment is specious. The defendant caused the death of a young woman and, once he was caught, negotiated a plea agreement in which he knowingly made admissions and waivers in order to avoid a mandatory life sentence. Having gotten the benefit of the bargain he made, he should not now be heard to complain. Because the proposed amendment is frivolous, the motion for leave to amend should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: <u>/s John A. Wortmann, Jr.</u>
JOHN A. WORTMANN, JR.
Assistant U.S. Attorney
(617) 748-3207

<u>CERTIFICATE OF SERVICE</u>

I, JOHN A WORTMANN, JR., Assistant U.S. Attorney, do hereby certify that I have this 26th day of January, 2005, served the copy of the foregoing by mail to the Petitioner.

<u>/s John A. Wortmann, Jr.</u>
JOHN A. WORTMANN, JR.
Assistant U.S. Attorney

13

# EXHIBIT A

# PLEA AGREEMENT[7]

---

[7] The signed agreement was submitted to the court at the time of the Rule 11 hearing in this case.



**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

*1 Courthouse Way, Suite 9200*
*Boston, Massachusetts 02210*

April 28, 2003

Leo Sorokin
Office of the Federal Defender
408 Atlantic Avenue
Boston, MA 02109

   **Re: <u>United States v. Anthony Zanuccoli</u>**
    **Criminal No. 02-10149-JLT**

Dear Mr. Sorokin:

  This letter sets forth the Agreement between the United States Attorney for the District of Massachusetts ("the U.S. Attorney") and your client, Anthony Zanuccoli ("Defendant"), in the above-captioned case. The Agreement is as follows:

  1.  <u>Change of Plea</u>

  At the earliest practicable date, but in no event later than May 30, 2003, Defendant shall plead guilty to Counts One, Two and Three of the Indictment in this matter. Defendant expressly and unequivocally admits that he in fact knowingly, intentionally and willfully committed the crimes charged in Counts One, Two, and Three of the Indictment and is in fact guilty of those offenses. Defendant acknowledges that an Information has been filed in this case pursuant to 21 U.S.C. § 851 and agrees to the facts set forth therein.

  2.  <u>Penalties</u>

  Defendant faces the following minimum mandatory and maximum penalties on each of Counts One and Two of the Indictment: a minimum mandatory term of imprisonment of life, a fine of up to $2,000,000, at least a 6-year term of supervised release and a maximum of life, and a $100 Special Assessment.

  Defendant faces the following maximum penalties on Count Three of the Indictment: a maximum term of imprisonment of 30 years, a fine of up to $ 2,000,000, at least a 6-year term of supervised release and a maximum of life, and a $100 Special

Assessment.

3.  Sentencing Guidelines

The parties agree to take the following positions at sentencing with regard to offense conduct and adjustments under the United States Sentencing Guidelines ("Sentencing Guidelines"):

(A) Base Offense Level

The parties agree that the distribution charged in Count Two of the Indictment and the conspiracy charged in Count One of the Indictment resulted in the death of Melanie Thompson and that Defendant's Base Offense Level is therefore 38 pursuant to U.S.S.G. 2D1.1(a)(2) and that, absent the filing of a motion under U.S.S.G. § 5K1 and 18 U.S.C. §3553(e), he is subject to a mandatory minimum sentence of life imprisonment.  The defendant waives any claim he has under Apprendi v. New Jersey, U.S.S.G. § 2D1.1, or on any other basis to have these determinations made by the jury at trial.

4.  Agreed Disposition

The U.S. Attorney and Defendant agree pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the following is the appropriate disposition of this case:

    a)   incarceration for a period of 240 months;

    b)   a period of supervised release of six years;

    c)   no fine (based on Defendant's inability to pay); and,

    d)   a $300 mandatory special assessment.

The U.S. Attorney has agreed to the appropriateness of this disposition based, in part, upon Defendant's acceptance of responsibility for the offenses in this case.  Defendant shall be in breach of this Agreement if Defendant:

    (1)   Fails to admit a complete factual basis for the plea at the time it is entered;

    (2)   Denies involvement in the offenses specified in paragraph one to which Defendant is pleading guilty, denies that the overdose death of Melanie

16

Thompson is attributable to him, gives conflicting statements about his involvement, or is untruthful with the Court or U.S. Probation Office;

(3) Denies criminal responsibility for the conduct charged in the offenses specified in paragraph one to which Defendant is pleading guilty, such as by claiming that such conduct was the result of negligence or mistake;

(4) Gives false or misleading testimony in any proceeding relating to the criminal conduct charged in this case after the date he enters into this Agreement;

(5) Engages in acts after the execution of this Agreement which form a basis for finding that Defendant has obstructed or impeded the administration of justice under U.S.S.G. § 3C1.1;

(6) Engages in criminal conduct after the date he enters into this Agreement; and/or,

(7) Attempts to withdraw his guilty plea or otherwise acts in a manner which is materially inconsistent with acceptance of responsibility for any of the offenses in this case after the date he enters into this Agreement.

In the event of an appeal from, or collateral challenge to, Defendant's sentence, the U.S. Attorney reserves his right to argue the correctness of Defendant's sentence and the manner in which the District Court determines it.

5.   Payment of Mandatory Special Assessment

Defendant agrees to pay the mandatory special assessment to the Clerk of the Court on or before the date of sentencing, unless Defendant establishes to the satisfaction of the Court that Defendant is financially unable to do so.

6.   Waiver of Rights to Appeal and to Bring Collateral Challenge

Defendant is aware that he has the right to challenge his sentence and guilty plea on direct appeal.  Defendant is also aware that he may, in some circumstances, be able to argue that his plea should be set aside, or his sentence set aside or

17

reduced, in a collateral challenge (such as pursuant to a motion under 28 U.S.C. § 2255).

In consideration of the concessions made by the U.S. Attorney in this Agreement, Defendant knowingly and voluntarily waives his right to appeal or collaterally challenge:

> (1) Defendant's guilty plea and any other aspect of Defendant's conviction, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and,

> (2) The adoption by the District Court at sentencing of any of the positions found in paragraph 3 which will be advocated by the U.S. Attorney with regard to offense conduct, adjustments and/or criminal history under the U.S. Sentencing Guidelines or application of minimum mandatory sentences; and,

> (3) Any aspect of his conviction or sentence in any post-conviction proceeding. Defendant waives any right to seek a post-conviction reduction of his sentence based upon the post-sentencing vacation of any prior state or federal criminal convictions.

Defendant's waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on new legal principles in First Circuit or Supreme Court cases decided after the date of this Agreement which are held by the First Circuit or Supreme Court to have retroactive effect.

This Agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. § 3742(b), and the U.S. Attorney therefore retains his appeal rights.

7.    Cooperation

a.    Terms of Cooperation

Defendant agrees to cooperate fully with law enforcement agents and government attorneys. He must provide complete and truthful information to all law enforcement personnel. If his testimony is requested, he must testify truthfully and completely before any grand jury, and at any hearing and trial. Defendant must answer all questions put to him by any law enforcement agents or government attorneys and must not withhold any

18

information. He must not attempt to protect any person or entity through false information or omission, or to implicate falsely any person or entity.  Upon request, he must furnish all documents, objects and other evidence in his possession, custody or control that are relevant to the government's inquiries.

Defendant understands that he has a right to have counsel present when communicating with representatives of the government concerning the criminal conduct with which he has been charged. To facilitate his cooperation, Defendant hereby knowingly and voluntarily waives this right with respect to all debriefings by law enforcement agents and government attorneys and all appearances to testify.  This waiver may be revoked at any time by a specific request by Defendant or his counsel without otherwise affecting the terms or enforceability of this Agreement.

To enable the Court to have the benefit of all relevant sentencing information, Defendant waives any rights he may have to prompt sentencing and will join in any requests by the U.S. Attorney that sentencing be postponed until Defendant's cooperation is complete.  Defendant understands that the date of Defendant's sentencing is within the sole discretion of the Court and that this Agreement may require Defendant's cooperation to continue even after Defendant has been sentenced.  Defendant's failure to continue to cooperate pursuant to the terms of this Agreement after sentence is imposed shall constitute a breach of this Agreement by Defendant.

      b.   <u>Substantial Assistance Motion</u>

In the event that Defendant provides substantial assistance in the investigation or prosecution of another person who has committed a criminal offense, the U.S. Attorney agrees that, at or before the time of sentencing, the U.S. Attorney  will make a motion under U.S.S.G. § 5K1.1, and if the U.S. Attorney determines it to be appropriate, 18 U.S.C. § 3553(e) so that the sentencing court may impose a sentence below that which otherwise would be required under the Sentencing Guidelines and the relevant statutes.  The determination whether Defendant has provided substantial assistance rests solely in the discretion of the U.S. Attorney and is not subject to appeal or review.  The U.S. Attorney expressly reserves the right to decline to file a motion pursuant to U.S.S.G. § 5K1.1 if Defendant violates any condition of his pretrial release, violates any of the requirements of honesty and candor detailed in paragraph 7(a) above, or engages in any criminal conduct after the date he signs this Agreement.

19

c.    <u>Sentence Recommendation with Substantial Assistance</u>

If Defendant provides substantial assistance, subject to all the provisions of paragraphs 7(a) and (b) above, the U.S. Attorney will advise the sentencing judge of the full nature, extent and value of the assistance provided by Defendant.

d.    <u>Letter Immunity</u>

In return for Defendant's full and truthful cooperation, the U.S. Attorney agrees not to use any information provided by Defendant pursuant to this Agreement or pursuant to the proffer letter dated February 15, 2002 (or any information directly or indirectly derived therefrom) against Defendant in any criminal case except in a prosecution (1) for perjury or obstruction of justice, or for making a false statement after the date of this Agreement; or (2) for an act of physical violence against the person of another, or conspiracy to commit any such act of violence.  The U.S. Attorney reserves the right to respond fully and completely to all requests for information by the District Court and U.S. Probation Office in this case.  All such disclosures, however, shall be made subject to the provisions constraining the use of this information by the District Court and U.S. Probation Office contained in U.S.S.G. § 1B1.8(a) and the commentary thereto.  Notwithstanding the provisions of U.S.S.G. § 1B1.8(b)(5) and the commentary thereto, the U.S. Attorney agrees to take the position that at the time of sentencing information provided by Defendant pursuant to this Agreement should not be used either in determining where within the applicable guideline range to sentence Defendant or in determining whether, or to what extent, a departure from the Sentencing Guidelines is warranted.

If the U.S. Attorney determines that Defendant has breached this Agreement by making any false, incomplete or misleading statement, or by providing any false, incomplete or misleading information to any law enforcement personnel, grand jury or court, the U.S. Attorney may terminate this Agreement as set forth below, and may also prosecute Defendant for any and all offenses that could be charged against him in the District of Massachusetts, including, but not limited to, false statements and perjury.

8.    <u>Probation Department Not Bound By Agreement</u>

The sentencing disposition agreed upon by the parties and their respective calculations under the Sentencing Guidelines are

20

not binding upon the United States Probation Office.  Defendant's plea will be tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C). Defendant cannot withdraw his plea of guilty unless the sentencing judge rejects this Agreement.  If the sentencing judge rejects this Agreement, this Agreement shall be null and void at the option of either the United States or the Defendant.  In this regard, the Defendant hereby waives any defense to any charges which he might otherwise have under any statute of limitations or the Speedy Trial Act.

9.   <u>Civil Liability</u>

By entering into this Agreement, the U.S. Attorney does not compromise any civil liability, including but not limited to any tax liability, which Defendant may have incurred or may incur as a result of his conduct and his plea of guilty to the charges specified in paragraph one of this Agreement.

10.   <u>Rejection of Plea By Court</u>

Should Defendant's guilty plea not be accepted by the Court for whatever reason, or later be withdrawn on motion of Defendant, this Agreement shall be null and void at the option of the U.S. Attorney.

11.   <u>Breach of Agreement</u>

If the U.S. Attorney determines that Defendant has failed to comply with any provision of this Agreement has committed any crime following his execution of this Agreement, the U.S. Attorney may, at his sole option, be released from his commitments under this Agreement in their entirety by notifying Defendant, through counsel or otherwise, in writing.  The U.S. Attorney may also pursue all remedies available to him under the law, irrespective of whether he elects to be released from his commitments under this Agreement.  Further, the U.S. Attorney may pursue any and all charges which have been, or are to be, dismissed pursuant to this Agreement.  Defendant recognizes that no such breach by him of an obligation under this Agreement shall give rise to grounds for withdrawal of his guilty plea. Defendant understands that, should he breach any provision of this agreement, the U.S. Attorney will have the right to use against Defendant before any grand jury, at any trial or hearing, or for sentencing purposes, any statements which may be made by him, and any information, materials, documents or objects which may be provided by him to the government subsequent to this Agreement without any limitation.  In this regard, Defendant hereby waives any defense to any charges which he might otherwise

have under any statute of limitations or the Speedy Trial Act.

    12.  <u>Who Is Bound By Agreement</u>

    This Agreement is limited to the U.S. Attorney for the District of Massachusetts, and cannot and does not bind the Attorney General of the United States or any other federal, state or local prosecutive authorities.

    13.  <u>Complete Agreement</u>

    This letter and the proffer letter dated February 15, 2002 contain the complete agreement between the parties.  No promises, representations or agreements have been made other than those set forth in this letter and the proffer letter dated February 15, 2002.  This Agreement supersedes prior understandings, if any, of the parties, whether written or oral.  This Agreement can be modified or supplemented only in a written memorandum signed by the parties or on the record in court.

    If this letter accurately reflects the Agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Agreement below.  Please also sign below as Witness.  Return the original of this letter to Assistant U.S. Attorney John A. Wortmann, Jr.

Very truly yours,

MICHAEL J. SULLIVAN
United States Attorney

By: _____
JAMES B. FARMER
Assistant U.S. Attorney
Chief,
Criminal Division

STEPHEN P. HEYMANN
Assistant U.S. Attorney
Deputy Chief,
Criminal Division

JOHN A. WORTMANN, JR.
Assistant U.S. Attorney

ACKNOWLEDGMENT OF PLEA AGREEMENT

    I have read this letter in its entirety and discussed it with my attorney.  I hereby acknowledge that it fully sets forth my agreement with the United States Attorney's Office for the District of Massachusetts.  I further state that no additional promises or representations have been made to me by any official of the United States in connection with this matter. I understand the crimes to which I have agreed to plead guilty, the maximum penalties for those offenses and Sentencing Guideline penalties potentially applicable to them.  I am satisfied with the legal representation provided to me by my attorney.  We have had sufficient time to meet and discuss my case.  We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial.  I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

    `

                           _____
                           ANTHONY ZANUCCOLI
                           Defendant

                           Date:

    I certify that Anthony Zanuccoli has read this agreement to him in its entirety and that we have discussed its meaning.  I believe he understands the Agreement and is entering into the Agreement freely, voluntarily and knowingly.

                           _____
                           LEO SOROKIN, ESQ.
                           Attorney for Defendant

                           Date:_____