UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANTHONY ZANUCCOLI, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 04-12170-JLT |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

MEMORANDUM
November 2, 2006

TAURO, J.

**I. Introduction**

On July 10, 2003, Petitioner Anthony Zanuccoli ("Zanuccoli") pleaded guilty in the United States District Court for the District of Massachusetts to three counts of possession and distribution of heroin.¹ Zanuccoli entered his plea pursuant to a plea agreement, in which he admitted, among other things, that his acts "resulted in the death of Melanie Thompson . . . ."² Zanuccoli agreed that, as a result, he faced a mandatory minimum sentence of life imprisonment if tried and convicted.³ Zanuccoli agreed to plead guilty in exchange for the government's

---

¹ See 5/2/2002 Indictment, Docket [10], Case No. 02-CR-10149-JLT (charging three counts under 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), 18 U.S.C. § 2).

² Gov't Opp'n to Pet.'s Mot. to Am., Ex. 1 (4/28/03 Plea Agreement) ¶ 3(A) (hereinafter "Plea Agreement"); see also Case No. 02-CR-10149-JLT, Docket [41] (Plea Agreement Letter).

³ Id.; see also 21 U.S.C. § 841(b)(1)(C) ("Penalties – In the case of a controlled substance in schedule I or II . . . [i]f any person commits such a violation after a prior conviction for a felony drug offense becomes final [and] if death or serious bodily injury results from the use of such substance, [defendant] shall be sentenced to life imprisonment"); U.S.S.G. 2D1.1(a)(2) (applicable sentencing guidelines).

recommended disposition of 240 months incarceration.[4]

Zanuccoli did not plead unwisely, for the government had caught him red-handed. Following the hospitalization of Melanie Thompson for acute opiate intoxication, officers of the Peabody Police Department enlisted a cooperating witness ("CW"), who recorded a telephone call to and drug purchase from Zanuccoli.[5] As police officers surveilled and listened, the CW asked Zanuccoli for "the same stuff that Melanie got last Thursday," which Zanuccoli replied had really "knocked her on her ass."[6] After being taken into custody, Zanuccoli waived his Miranda rights and gave officers a detailed account of his heroin sale to Thompson and its aftereffects.[7] The Massachusetts Medical Examiner subsequently determined that Thompson died from a heroin overdose.[8] On October 3, 2003, this court accepted the recommended disposition and sentenced Mr. Zanuccoli to twenty years incarceration.

On October 8, 2004, Zanuccoli filed a Motion to Set Aside, Correct, or Vacate his Sentence pursuant to 28 U.S.C. § 2255. In his motion, Zanuccoli claims that: (1) he received ineffective assistance of counsel when his counsel refused to file an appeal at his direction; (2) his attorney did not disclose to him a letter that showed the victim may have attempted suicide; (3) the court sentenced him for conduct not charged in the indictment, in violation of Booker; (4) his

---

[4] Plea Agreement ¶ 4.

[5] Gov't Response to Pet.'s Am. 2255 Mot. at 4-5 (citing 10/22/03 Presentence Report ("PSR") ¶¶ 14-20) .

[6] Id. at 5-6 (citing PSR ¶¶ 21-22).

[7] Id. at 7.

[8] Id. at 5 (citing PSR ¶ 16).

attorney gave him incorrect advice concerning the application of the Sentencing Guidelines; and (5) the prosecutor "served the wrong party with his § 851 Information [to establish prior convictions]."[9]

For the reasons that follow, Zanuccoli's Motion to Vacate, Set Aside or Correct Sentence is DENIED.

## II. Discussion

"Postconviction relief on collateral review is an extraordinary remedy, available only upon a sufficient showing of fundamental unfairness."[10] To obtain relief under 28 U.S.C. § 2255, a petitioner must show that an error of law is jurisdictional, constitutional, or "a fundamental defect which inherently results in a complete miscarriage of justice."[11] Petitioner makes no such showing.

First, Petitioner's claim that his counsel impermissibly refused to file an appeal at his direction is inherently incredible, is contradicted by the evidence, and fails even if true.[12] Petitioner claims that "[a]fter I was sentenced, I instructed my counsel Leo Sorokin to appeal my

---

[9] Pet.'s 2255 Mot. at 5; Pet.'s Am. 2255 Mot. at 9.

[10] Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994).

[11] Brecht v. Abrahamson, 507 U.S. 619, 634 n.8 (1993); United States v. Addonizio, 442 U.S. 178, 185 (1979) (citation omitted).

[12] For claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential." Strickland v. Washington, 466 U.S. 668, 689 (1984). A defendant "must show that counsel's errors were so serious as to deprive the defendant of a fair trial . . . ." Id.; see also Carey v. United States, 50 F.3d 1097, 1098 (1st Cir. 1995) ("The court must take the allegations contained in the petitioner's motion as true, except to the extent that 'they are contradicted by the record or are inherently incredible, and to the extent that they are merely conclusions rather than statements of fact.'") (quoting Mack v. United States, 635 F.2d 20, 26-27 (1st Cir. 1980)).

sentence [but] he has not."[13]  This claim is highly implausible.  Petitioner had no reason to appeal his sentence, because he received *exactly* the sentence agreed upon in his plea bargain.  Further, Petitioner expressly waived his right to appeal.[14]  Petitioner's attorney also expressly contradicts Petitioner's claim, stating that he has "no recollection of Mr. Zanuccoli directing me to file a notice of appeal.  It is my usual practice to file a notice of appeal on behalf of any client that so asks whether or not, in my opinion, the client has any non-frivolous issues to press on an appeal."[15]

Even if Petitioner's counsel failed to appeal, that oversight would not amount to ineffective assistance of counsel in this case.  The Supreme Court has held that a counsel's failure to appeal is not per se deficient.[16]  Rather, claims of ineffective assistance of counsel based on failure to appeal are governed by the same standard as other ineffective assistance of counsel claims: "whether counsel's performance was reasonable considering all the circumstances."[17]  A guilty plea and lack of nonfrivolous grounds for appeal are "highly relevant" circumstances in determining deficiency.[18]  Here, Petitioner not only pleaded guilty, but no nonfrivolous grounds

---

[13] Pet.'s 2255 Mot. at 5.

[14] Plea Agreement ¶ 6 ("Waiver of Rights to Appeal and to Bring Collateral Challenge").

[15] Sorokin Aff. ¶ 4.

[16] See Roe v. Flores-Ortega, 528 U.S. 470, 478-80 (2000) (holding that counsel's failure to file notice of appeal is not per se deficient, and considering a guilty plea and lack of nonfrivolous grounds for appeal as "highly relevant" factors in making determination of deficiency), abrogating U.S. v. Tajeddini, 945 F.2d 458 (1st Cir. 1991).

[17] Id. at 478 (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)).

[18] Id.

for appeal exist, because Petitioner got exactly what he bargained for in his Plea Agreement.

Second, Petitioner's claim that his attorney did not disclose a letter that showed the victim Melanie Thompson may have attempted suicide by overdosing on heroin fails because such evidence would not affect Petitioner's culpability or sentence.[19]  Pursuant to 21 U.S.C. § 841(b)(1)(C), "if death or serious bodily injury results from the use of" heroin, and defendant has a prior conviction for a felony drug offense, defendant "shall be sentenced to life imprisonment."  Courts apply a strict liability standard to the "death resulting" provision in the statute, respecting the statute's plain meaning.[20]  Suicide through heroin overdose meets the statute's terms, because it is a "death resulting from the use of" the heroin, irrespective of the victim's state of mind.  As a result, the alleged failure by Petitioner's attorney to provide a letter concerning Melanie Thompson's potential state of mind at the time of her death is immaterial.

Third, Petitioner's Booker-related claims fail because Petitioner admitted all facts upon which his conviction was based in his Plea Agreement.  Petitioner contends that:  (1) his indictment did not charge him with Melanie Thompson's death; and (2) no specific amount of drugs was charged in the indictment.[21]  Petitioner argues that under the rule established in Apprendi and Blakely, to base his sentence on these facts would violate his Sixth Amendment

---

[19] See Pet.'s 2255 Mot. at 5.

[20] See United States v. Wall, 349 F.3d 18, 23-25 (1st Cir. 2003); United States v. Soler, 275 F.3d 146, 153 (1st Cir. 2002) ("when a defendant deals drugs and a user of those drugs dies as a result, section 841(b)(1)(C) applies without any independent proof that the death was a reasonably foreseeable event"); United States v. McIntosh, 236 F.3d 968, 972 (8th Cir. 2001) ("giving effect to [the statute's] plain meaning prohibits us from superimposing upon the statute a foreseeability or proximate cause requirement").

[21] See Pet.'s Am. 2255 Mot. at 6-7.

5

right to trial by jury. Apprendi and Blakely establish that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," or be admitted by the defendant in a guilty plea.[22] Here, Petitioner admitted in his Plea Agreement that he "knowingly, intentionally, and willfully committed the crimes charged in Counts One, Two, and Three of the Indictment" and that "the distribution charged in Count Two of the Indictment . . . resulted in the death of Melanie Thompson . . . ."[23] Petitioner also understood the allowable range of penalties under the Sentencing Guidelines for those offenses.[24] The court sentenced Petitioner to twenty years incarceration, a term that did not exceed the penalty of life imprisonment that the court could have imposed based on the facts Petitioner admitted in his guilty plea.[25] Consequently, the court did not base the sentence on improperly determined facts, and there is no Booker or Blakely violation.

Fourth, Petitioner's claim that he received incorrect advice concerning the application of the Sentencing Guidelines is baseless. Petitioner claims that his "attorney told him that if he did not take the plea bargain the government was offering, he would get life in prison, and the

---

[22] Blakely v. Washington, 542 U.S. 296, 301-04 (2004) (finding that "[t]he judge in this case could not have imposed the exceptional 90-month sentence solely on the basis of the facts admitted in the guilty plea.").

[23] Plea Agreement ¶¶ 1, 3(A).

[24] Id. ¶¶ 2-3.

[25] See 21 U.S.C. § 841(b)(1)(C) (mandatory sentence of life imprisonment if death results from heroin use, and defendant has prior conviction for a felony drug offense).

sentencing guidelines did not apply."[26]  Petitioner claims that this was "incorrect advice."[27]  It was not.  Petitioner's attorney correctly stated that Petitioner faced a mandatory sentence of life imprisonment if convicted of distribution of heroin resulting in the death of Melanie Thompson.[28]  Statute, not the Sentencing Guidelines, dictated this sentence.  Petitioner also acknowledged in the Plea Agreement that "he is subject to a mandatory minimum sentence of life imprisonment."[29]

Finally, Petitioner's claim that his sentence should be modified "because [the prosecutor] served the wrong party with his § 851 information" fails for several reasons.  The prosecutor certifies serving a copy of the "Information to Establish Petitioner's Prior Convictions pursuant to 21 U.S.C. § 851," on counsel for "Daniel Stella,"[30] instead of Petitioner.[31]  Pursuant to 21 U.S.C. § 851(a), "[n]o person who stands convicted of an offense under [Part D of Title 21, Chapter 13] shall be sentenced to increased punishment by reason of one or more prior convictions, unless . . . the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon."  Even assuming "Daniel Stella['s]" name on the Information's Certificate of Service is not a clerical error, and the government in fact failed to serve a copy on Petitioner's

---

[26] Pet.'s 2255 Mot. at 6.

[27] Id.

[28] See 21 U.S.C. § 841(b)(1)(C) (mandatory sentence of life imprisonment if death results from heroin use, and defendant has priory conviction for a felony drug offense).

[29] Plea Agreement ¶ 3(A).

[30] Daniel Stella is not a party in this case.

[31] 5/7/02 Information to Establish Prior Convictions at 2 (02-CR-10149 Docket [11]).

attorney, the record reflects that the Information was filed with the court. Moreover, Petitioner expressly "acknowledge[d] that an Information has been filed in this case pursuant to 21 U.S.C. § 851[,] and agree[d] to the facts set forth therein."[32] Finally, Petitioner pointedly did not then and does not now dispute the existence of his prior convictions. As a result, the alleged failure to notify Petitioner of his prior convictions can hardly be characterized as a "fundamental miscarriage of justice"[33] warranting habeas relief.[34]

**III. Conclusion**

Petitioner pleaded guilty to distribution of heroin, and admitted in his plea that the drug resulted in the death of Melanie Thompson. Petitioner got exactly what he bargained for–a sentence of twenty years imprisonment. None of the process afforded Petitioner was "fundamentally unfair" or resulted in "a complete miscarriage of justice."

For all of the foregoing reasons, Mr. Zanuccoli's Motion to Vacate, Set Aside, or Correct his sentence is DENIED.

AN ORDER WILL ISSUE.

                                                                          /s/ Joseph L. Tauro  
                                                                    United States District Judge

---

[32] See Case No. 02-CR-10149 JLT, Docket Entries 11, 43; Plea Agreement ¶ 1.

[33] Addonizio, 442 U.S. at 185 (citation omitted).

[34] See, e.g., United States v. Gibson, 64 F.3d 617, 625-26 (11th Cir. 1995) (finding no due process violation where defendant had reasonable notice of his prior convictions and knowledge that the sentencing enhancement applied); United States v. Johnson, 973 F.2d 857, 861 (10th Cir. 1992) (concluding that defendant did not suffer any prejudice by an erroneous reference to a shorter sentence in the plea agreement because defendant was fully informed of the application of the enhancement prior to his sentence and could have withdrawn his guilty plea).